RECEIVED
MAY 20 2011
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| NATHANIEL ARDOIN | CIVIL ACTION NO. 6:09-CV-2180 |
| VERSUS | JUDGE DOHERTY |
| CITY OF EUNICE, ET AL | MAGISTRATE JUDGE HANNA |

## MEMORANDUM RULING

Currently pending before the Court is a Motion for Summary Judgment [Doc. 20] filed by the City of Eunice; Chief James Gary Fontenot, individually and in his official capacity as Chief of Police of the City of Eunice; and Officer Daniel Crum, individually and in his official capacity as a police officer for the City of Eunice (collectively referred to as "defendants"). In their motion, defendants seek a summary judgment, "finding that defendants are entitled to judgment as a matter of law, and dismissing all of plaintiff's claims, at plaintiff's cost." [Doc. 20, p.3]

### I.    Background

Plaintiff Nathaniel Ardoin brought this law suit seeking damages pursuant to 42 U.S.C. §§ 1983, 1985 and 1986[1], arguing he was subjected to excessive force by Officer Daniel Crum on December 25, 2008. [Doc. 3, ¶¶ 3, 7] Plaintiff additionally asserts he was "assaulted and battered" by Officer Crum, in violation of La. Civ. Code arts. 2315, *et seq.*[2] [Id.] Plaintiff also asserts the City

---

[1] "Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution." Collins v. City of Harker Heights, Tex., 503 U.S. 115, 120 (1992). Section 1985 addresses "conspiracy to interfere with civil rights"; section 1986 provides a cause of action for neglecting to prevent a "conspiracy," as that term is defined in section 1985.

[2] La. Civ. Code art. 2315 provides in pertinent part: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

1

of Eunice and Chief Gary Fontenot are liable for "failing to adequately and/or properly train and/or supervise personnel, including Daniel Crum." [Doc. 3, ¶ 8(3)] Additionally, in the motion for summary judgment, defendants address a claim made pursuant to 42 U.S.C. § 1983 for an illegal seizure, and a claim made pursuant to Louisiana state law for false arrest. [Doc. 20-1, pp.12, 18-20] To the extent such claims have been asserted (which is not entirely clear to this Court following a review of the complaint), plaintiff has effectively abandoned them. [*See* Doc. 27, p. 5 ("Plaintiff has no evidence to oppose the dismissal of his false arrest claims [made pursuant to § 1983] in this matter as he pled guilty to one of the charges that were brought against him."); Id. at 7 ("Plaintiff has no objection to the dismissal of his state false arrest claims because he was in fact convicted of a crime.")] Accordingly, any claims made for an illegal seizure (pursuant to § 1983) and for false arrest (pursuant to La. Civ. Code art. 2315) are dismissed.

The following facts, as set forth by defendant, have not been disputed by plaintiff in this proceeding:

> This lawsuit stems from an incident which occurred at an establishment called the Daiquiri Shack, in Eunice, on December 25, 2008. Officer Ave Sonnier was working off duty security there that night. A patron of the bar approached her and informed her of two males on the dance floor who had removed their shirts. She asked the two men, Nathaniel Ardoin and Joseph Edwards, to put their shirts back on or leave the premises. Ardoin and Edwards started to leave the bar, when a "disturbance" began, and the men tried to get back in the bar by pushing Officer Sonnier out of the way. At that point, Officer Sonnier called for backup because the crowd was becoming unruly, with some people trying to get out of the bar, and some trying to get back in. Officers Crum, Mann, and Pressburg, and Sergeant Thibodeaux arrived on the scene in response to Officer Sonnier's call for backup. While Officer Brock Mann was attempting to arrest one of the participants in the disturbance, Joseph Edwards tried to pull Officer Mann off of the other man, at which point Officer Mann turned his attention to Joseph Edwards to arrest him. Joseph Edwards resisted, resulting in Officer Mann deploying his taser on Joseph Edwards. When Joseph Edwards fell to the ground, Ashley Edwards jumped on top of him. Officer Crum and Officer Sonnier pulled Ashley Edwards off of Joseph Edwards.

Eventually, Sergeant Thibodeaux gained control of Ashley Edwards.³

[Doc. 20-1, pp. 8-9 (citations omitted)]

The events which happened next are in dispute. According to defendants:

> At that point, the plaintiff, Nathaniel Ardoin, approached Sergeant Thibodeaux and was told to "get back." However, plaintiff proceeded to grab a beer bottle and dive back towards Sergeant Thibodeaux. Fearing that the plaintiff would harm Sergeant Thibodeaux with the beer bottle, Officer Crum intervened, grabbing the plaintiff and falling to the ground with him. Reserve Officer Daniel Leger also witnessed the plaintiff in possession of a beer bottle "like he was coming to strike Officer Thibodeaux."

[Id.]

According to plaintiff, after Joseph Edwards was tased, and Joseph's sister, Ashley Edwards, was also "assaulted unnecessarily," plaintiff "made a statement to the effect that the actions of Mr. Crum and the other officers were unnecessarily forceful, specifically too [sic] Ms. Edwards." [Doc. 19, p.1] Plaintiff continues, "At that point, he [plaintiff] was tackled by Officer Crum . . ., slammed to the ground, suffering serious injuries." [Id.] Plaintiff denies having a bottle in his hand at the time of the incident in question.⁴

---

³Joseph and Ashley Edwards are plaintiff's cousins. [Doc. 20-1, p. 93] The Court notes in addition to Joseph Edwards, his sister, Ashley Edwards, was also tased. [Id. at 81]

⁴As counsel for plaintiff has not provided this Court with many factual details, the Court has looked to the transcript from the underlying criminal trial of this matter. At plaintiff's criminal trial, he testified he, Joseph Edwards and "John" were leaving the Daiquiri Shack, when John asked if he could go back into the club to get his cell phone. When John returned, "the cop arrested him." [Doc. 20-1, p.93] He further testified when Joseph was leaving, a police officer said "freeze," and Joseph "picked his hand up" and was then tased. [Id.] Plaintiff testified his cousin, Ashley Edwards, then jumped on top of Joseph to protect him, and the officer tased her as well. [Id.] Plaintiff testified he then began walking toward Ashley to "check[] on [his] cousin, but "stopped at a distance." [Id.] He further testified he then said out loud, "'Yeah, this is F .... up.' 'I'm checking on my cousin.' I said, 'That's a girl.'" [Id. at 95] Plaintiff testified immediately after he made the foregoing statements, "the cop come from behind me and slammed me to the ground. And I woke up I was in handcuffs." [Id. at 93] Plaintiff testified other than Officer Sonnier, who asked him to leave the club due to him not wearing his shirt on the dance floor, no other officer gave him any kind of instruction or order (*i.e.* "to get back," etc.). [Id.at 94] Plaintiff denied

3

In defendants' statement of uncontested facts, they state, "After a two-day trial on the merits, plaintiff, Nathaniel Ardoin, was found guilty of interfering with the duties of a police officer, a violation of La. R.S. 14:108." [Doc. 20-4 (citations to Exhibits omitted); *see also e.g.* Doc. 20-1, p.12] Defendants further state, "Plaintiff's criminal conviction still stands and has not been timely appealed." [Id.] These statements have not been contested by plaintiff. [Doc. 20-4] Pursuant to LR 56.2, this should mean all parties agree to the foregoing statements of fact. *See* LR 56.2 ("All material facts set forth in the statement [of uncontested facts] . . . will be deemed admitted, for purposes of the motion, unless controverted as required by this rule.") Nevertheless, the foregoing facts appear to be at least partially incorrect, from the materials the Court has reviewed. Rather, it appears plaintiff was convicted of "Interfering with the Duties of a Police Officer" *in violation of a Eunice City Ordinance.*[5] [*See e.g.* Doc. 20-1, pp. 8-9, 124-126, 279-282, 286-287]

Neither party has provided this Court with a copy of the applicable city ordinance. However, the criminal trial judge did discuss the ordinance in her ruling:

> Ok. I'm ready to rule. . . . However, with regard to the city ordinance on the issue of interfering with an officer in the performance of, of an officer's duty, this is a bifurcated statute - 14:70. It is resisting an officer; interfering with an officer in performance of an officer's duty. It is a broader and encompassing statute with regard to the behavior of an individual as a violator of this particular ordinance. . . . Interference under this statute says, "shall mean, shall mean in addition to the common definition of such interference to physically." It wasn't physically. "And or verbally." . . . At the pont [sic] and time that Mr. Ardoin made a step toward and yelled, "That is F .... up", he was interfering with the duty of the police officer

---

running up to any of the officers (including Officer Thibodeaux), denied having a bottle in his hand at any time, and denied making any threatening motions or movements toward any officers on the evening in question. [Id. at 94-95]

[5]Joseph Edwards, Mr. Ardoin's cousin and co-defendant at the criminal trial, was tried for both the "state statute for resisting arrest [*i.e.* La. R.S. 14:108] and . . . a city ordinance for interfering with the duties of a police officer." [Doc. 20-1, p.42] However, according to the trial transcript, Mr. Ardoin was only tried for a violation of a Eunice City Ordinance.

because interference shall mean verbally inhibiting or detracting an officer of the law from the performance of his duty. If an officer in the face of a hundred people is attempting to arrest someone, then an individual who admittedly by his own testimony yells loudly, "That is F..up" and takes a step or two towards that officer, I'm not finding that he had a bottle. I don't have to go that far. If he approached the officer yelling, "That is F...up." For the intent of that officer to be detracted by that statement he's interfering with the duties of the officer. And I find him guilty for that. Not for running at him with a bottle. I don't even have to find he ran at him. If he approaches and yells to detract that officer from his duty, then we have a legitimate I think guilty verdict on interfering with the duties of a police officer. Now, with regards to that, it is a city ordinance . . . and again your issue as to the excessiveness of the force and pushing him sir, that happened after he said the detracting remarks, yelling it. Whether or not that was a response or a response in proportion to what was done, that's, as I said another matter for another day. But I do find him guilty of interfering with the duties of a police officer. . . .

[Doc. 20-1, pp. 124-126]

The Court now turns to the pending motion for summary judgment. However, it must first be noted that the motion for summary judgment was filed almost three months prior to the close of discovery. Although plaintiff obtained a one week extension for submission of his opposition memorandum, at the time plaintiff filed his memorandum, the discovery deadline had still not passed. Approximately one month after plaintiff filed his opposition memorandum (but again, prior to the close of discovery), plaintiff submitted additional evidence in support of his opposition memorandum. Discovery is now complete. Defendants have submitted no additional evidence pertaining to the pending motion, nor has plaintiff submitted any additional evidence since the close of discovery. Accordingly, the motion is now ripe for ruling.

## II. Summary Judgment Standard

A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

5

Fed. R. Civ. Proc. 56(a). As summarized by the Fifth Circuit in Lindsey v. Sears Roebuck and Co., 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; *see also*, Moody v. Jefferson Parish School Board, 2 F.3d 604, 606 (5th Cir.1993); Duplantis v. Shell Offshore, Inc., 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

Lujan v. National Wildlife Federation, 497 U.S. 871, 884 (1990)(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)(citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." Id. To the contrary, in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached. Roberts v. Cardinal Servs., 266 F.3d 368, 373 (5th Cir. 2001).

### III. Analysis

#### A. Favorable Termination Rule

In the motion for summary judgment, defendants first argue plaintiff's claims are barred by the "favorable termination rule," originally set forth in Heck v. Humphrey, 512 U.S. 477 (1984). [Doc. 18, pp. 15-18] As summarized by the Fifth Circuit:

> It is well settled that, under Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if the alleged violation arose from the same facts attendant to the charge for which he was convicted, unless he proves "that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Heck, 512 U.S. at 486-87, 114 S.Ct. 2364; Randell v. Johnson, 227 F.3d 300, 301 (5th Cir.2000); Sappington v. Bartee, 195 F.3d 234, 235 (5th Cir.1999). "Heck requires the district court to consider 'whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.'" Jackson v. Vannoy, 49 F.3d 175, 177 (5th Cir.1995) (citation omitted). This requirement or limitation has become known as the "favorable termination rule." Sappington, 195 F.3d at 235.

Ballard v. Burton, 444 F.3d 391, 396 (5th Cir. 2006).

In this matter, plaintiff's conviction and sentence have not been reversed on direct appeal, expunged, declared invalid or otherwise called into question in a *habeus* proceeding. Therefore, in order to determine whether Heck's favorable termination rule precludes plaintiff's § 1983 claim of excessive force, the Court must first determine whether a judgment in plaintiff's favor would necessarily imply the invalidity of his conviction for interfering with the duties of a police officer, in violation of a Eunice City Code Ordinance. The criminal trial judge specifically found Mr. Ardoin was guilty of that particular crime by "verbally inhibiting" an officer who was attempting to make an arrest; the trial judge specifically refused to find defendant had run toward the police officer and/or had run toward the police officer with a beer bottle. [Doc. 20-1, p. 126 ("Not for running at him with a bottle. I don't even have to find he ran at him. If he approaches and yells to detract that officer from his duty, then we have a legitimate I think guilty verdict on interfering with the duties of a police officer.")] According to plaintiff's counsel, all witnesses at plaintiff's criminal trial "confirmed that there was nothing done by Mr. Ardoin to justify his arrest and that the method in which Mr. Ardoin was arrested constituted excessive force."[6] [Doc. 27, p.2] The Court additionally notes none of the police officers testified that plaintiff resisted the arrest in any manner. [*See e.g.* Doc. 20-1, p.47]

In light of the foregoing, this Court is unable to discern how a finding in plaintiff's favor in this particular matter (*i.e.* that Officer Munn used excessive force in arresting plaintiff) would

---

[6]Unfortunately, other than plaintiff's own testimony, the criminal trial transcript contains none of the testimony from any witnesses called by plaintiff. For each of plaintiff's witnesses, the transcript notes "testimony is inaudible due to radio interference from the Eunice Police Department." However, in addition to counsel's summary of the inaudible trial testimony, he has also submitted supporting evidence in the form of affidavits and citizen's complaints filed with the Eunice Police Department.

necessarily imply the invalidity of plaintiff's conviction for interfering with the duties of a police officer (by way of "verbal inhibition"), and defendants have not cited this Court to any jurisprudence factually supportive of their position.[7] Accordingly, plaintiff's claim of excessive force will not be dismissed on this basis.

### B. Official Capacity Claims[8]

Defendants next argue plaintiff's official capacity claims should be dismissed. More specifically, defendants argue, "Since plaintiff cannot prove his constitutional claims [because, according to defendants, they are barred by the favorable termination rule], defendants Officer Daneil [sic] Crum and Chief James Gary Fontenot (in their official capacities) and the City of Eunice cannot

---

[7]Rather, defendants have cited to several cases that address § 1983 claims, with underlying offenses such as battery on a police officer, aggravated assault on a police officer, etc. The reasoning of the cases cited by defendants is exemplified in Arnold v. Town of Slaughter, 100 Fed.Appx. 321, *2 (5th Cir. 2004), which is also cited by defendants:

> For example, we have held that a Texas conviction for aggravated assault on a police officer bars claims for excessive force related to the same conduct. We reached this holding after determining that Texas law permits an officer to use any force - even deadly force - to protect against an aggravated assault. Sappington, 195 F.3d at 237. Because any force was justified in response to an assault, a finding that the officers used excessive force would necessarily mean that the plaintiff had not committed aggravated assault. Id. And thus a judgment would call into question the plaintiff's conviction. Id. Likewise, we have also held that a Louisiana conviction for battery of an officer - a crime for which justification is an affirmative defense - prevents the plaintiff from suing for excessive force in connection with the incident. Hudson, 98 F.3d at 873. If the plaintiff proved his excessive force claim, he would essentially be proving that his battery was justified, which would undermine his conviction. Id. As these cases show, the Heck determination depends on the nature of the offense and of the claim.

Defendants in this matter have not shown that "any amount of force" is justified in response to a violation of the Eunice City Ordinance for Interfering with the Duties of a Police Officer, nor have they shown if plaintiff proves his excessive force claim, his criminal conviction will be undermined.

[8]In his complaint, plaintiff states defendants Chief Gary "Goose" Fontenot and Officer Daniel Crum are being sued in both their individual and official capacities. [Doc. 3, ¶ 4] Plaintiff has additionally named the City of Eunice as a defendant. [Id.]

9

be liable under 42 U.S.C.A. 1983." [Doc. 20-1, p.15] Defendants further argue:

> There is no evidence that the Eunice Police Department established an official policy or custom which encouraged police officers to use physical force against detainees and/or prisoners without need or provocation and/or to misuse force in any way. Further, the Eunice Police Department had in full force and effect a policy and procedure manual, which plaintiff will not be able to prove has any constitutional deficiencies. Thus, even if taken in the light most favorable to plaintiff for purposes of this Motion for Summary Judgment, **plaintiff has not and cannot produce any evidence to meet his burden of proving that the policies, customs, or practices of the City of Eunice caused a deprivation of plaintiff's constitutional rights.** The evidence adduced does not even remotely begin to prove such a pattern of excessive force. Thus, plaintiff's claims against the City, Chief Fontenot in his official capacity, and Officer Crum in his official capacity should be dismissed in their entirety.

[Doc.20-1, pp.17 (citations to the record omitted; emphasis in original)]

As plaintiff correctly notes, defendants filed their summary judgment motion almost three months prior to the discovery deadline. As plaintiff additionally notes, when he filed his memorandum in opposition, he had yet to receive responses from defendants to certain discovery he had propounded.[9] [Doc. 27, p.6] In his opposition memorandum, plaintiff "requests time to complete the discovery on the various complaints that may have been made against Crum, the other EPD officers present, and perhaps other Eunice Police Department officers before a ruling might be made." [Doc. 27, p.6] Pursuant to the scheduling order issued in this matter, all factual discovery was to be completed by December 6, 2010. [Doc. 17, p.2] Additionally, pursuant to the Federal Rules of Civil Procedure, responses to plaintiff's discovery should have been provided no later than October 25, 2010. Fed. R. Civ. P. 33 and 34. On November 12, 2010, plaintiff submitted additional evidence in support of his opposition memorandum. However, that evidence did not pertain to whether or not

---

[9]Plaintiff states he sent his request for discovery to defendants the same day as the motion for summary judgment was filed, and the discovery addressed "'any and all complaints' against Daniel Crum and any other EPD officer present at the scene of Mr. Ardoin's arrest." [Doc. 27, p.6]

there existed "an official policy or persistent and widespread custom[]," allowing Eunice police officers to use excessive force in effecting arrests. Duvall v. Dallas County, Tex., 631 F.3d 203, 208 (5th Cir. 2011). Accordingly, plaintiff has failed to carry his "burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial," and thus, plaintiff's official capacity claims must be dismissed. Lindsey, *supra*[10]; *see also* Lujan at 884 ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

### C. Claim Against Chief Fontenot in his Individual Capacity

Defendants next argue plaintiff's claim against Chief Fontenot in his individual capacity must be dismissed as a matter of law, as "plaintiff does not claim that Chief Fontenot was present on the date of his arrest, nor that Chief Fontenot used any force against him." [Doc. 20-1, p. 17] Defendants state:

> A supervising officer may be personally liable under § 1983 only if: (1) he was personally involved in an act causing the deprivation of constitutional rights; or (2) his action or inaction, such as insufficient training or supervision, is connected to the alleged constitutional violation. *Baker v. Putnal*, 75 F.3d 190, 199 (5th Cir. 1996).

---

[10] As previously noted:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.

Lindsey at 618.

[Id.]

As plaintiff points out, the criminal trial testimony shows that Officer Crum had very little training at the time of the incident at issue. Officer Crum had been hired by the Eunice Police Department approximately six months prior to this incident. [Doc. 20-1, p.49] Although Officer Crum testified he had undergone "training with [his] FTO Officer for a period of ten weeks," he further testified as follows:

> Q. When you joined the police force in June 26th, in June, 2008 did you have to undergo training from that point forward?
>
> A. I was, never had a chance to go to the academy yet, due to injuries sir.
>
> Q. The typical training that you receive from an officer, which would be going to the academy, you hadn't had any of that as of the date of this incident?
>
> A. I haven't had that.
>
> Q. As of the time and date of this incident, December 25 correct?
>
> A. Correct.
>
> Q. And you still haven't had it to this date [*i.e.* April 27, 2009]?
>
> A. No.

[Id. at 49-50]

The entirety of defendants' argument on this point (excluding their statement of the applicable law) is as follows:

> There are certainly no allegations that the Chief was personally involved in the incident. There is also no evidence that either the Chief knew about any alleged pattern of unconstitutional practices nor that he was deliberately indifferent by failing to stop any such alleged practice. Accordingly, there can be no liability on behalf of Chief Fontenot in his individual capacity.

[Doc. 20-1, p.18] As defendants have failed to address whether Chief Fontenot's "action or inaction,

such as insufficient training or supervision, is connected to the alleged constitutional violation," they have failed to carry their burden of showing summary judgment is warranted with regard to plaintiff's claim against Chief Fontenot in his individual capacity. Baker, *supra*; *see also* Lindsey (Where the non-movant bears the burden of proof at trial, the movant may satisfy his summary judgment burden by pointing to the absence of evidence as to a particular claim.)

### D. State Law Claims

Defendants next argue, "Plaintiff's excessive force claim [made pursuant to state law] fails, because the force used to effectuate his arrest was reasonable under the circumstances." [Doc. 20-1, p.20] As the Louisiana Supreme Court stated in Kyle v. City of New Orleans, 353 So.2d 969 (La. 1977):

> The use of force when necessary to make an arrest is a legitimate police function. But if the officers use unreasonable or excessive force, they and their employer are liable for any injuries which result.
>
> Whether the force used is reasonable depends upon the totality of the facts and circumstances in each case. A court must evaluate the officers' actions against those of ordinary, prudent, and reasonable men placed in the same position as the officers and with the same knowledge as the officers. The degree of force employed is a factual issue.
>
> Several factors to be considered in making this determination are the known character of the arrestee, the risks and dangers faced by the officers, the nature of the offense involved, the chance of the arrestee's escape if the particular means are not employed, the existence of alternative methods of arrest, the physical size, strength, and weaponry of the officers as compared to the arrestee, and the exigencies of the moment.

Id. at 972-973 (citations omitted).

In this matter, both plaintiff and defendants have submitted evidence (primarily in the form of eyewitness testimony) in support of their respective positions with regard to whether or not the amount of force used to effect plaintiff's arrest was reasonable. The only facts that seem to be

13

agreed upon by both parties is that after plaintiff's cousins Joseph and Ashley Edwards were tased: (1) plaintiff walked toward his cousins and stated something to the effect of: "Yeah, this is F .... up. I'm checking on my cousin. That's a girl."; and (2) thereafter, Officer Crum "tackled" plaintiff and arrested him. [Doc. 20-1, pp. 45-48] After a review of all materials filed to date, the Court finds there is a genuine issue of material fact as to whether or not the amount of force used to arrest plaintiff was excessive. Accordingly, this issue must be decided by the trier of fact at a trial on the merits.

With regard to plaintiff's state law claim for "battery," La. C.Cr.P. art. 220 provides: "A person shall submit peaceably to a lawful arrest. The person making a lawful arrest may use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistance of the person being arrested or detained." As previously noted, whether the force applied was "reasonable" is a question for the trier of fact in this matter. Accordingly, the Court finds summary judgment is inappropriate with regard to plaintiff's state law claim of battery.

## IV. Conclusion

In light of the foregoing reasons, defendants' motion for summary judgment [Doc. 20] is GRANTED IN PART and DENIED IN PART. The motion is granted to the extent it seeks: (1) dismissal of plaintiff's claim brought pursuant to 42 U.S.C. § 1983 for an illegal seizure, (2) dismissal of plaintiff's claim for "false arrest" brought pursuant to Louisiana state law, (3) dismissal of plaintiff's claim against the City of Eunice pursuant to § 1983, and (4) dismissal of plaintiff's claims brought against Officer Daniel Crum and Chief James Fontenot pursuant to § 1983 in their

official capacities. The motion is denied as to all other claims.[11]

THUS DONE AND SIGNED this ___20___ day of May, 2011.

                                                              REBECCA F. DOHERTY
                                                              UNITED STATES DISTRICT JUDGE

---

[11] The Court notes although defendants have asserted the defense of qualified immunity in their Answer to the Complaint [Doc. 8, p.6], they have not argued Officer Crum is entitled to qualified immunity in the motion before the Court. Accordingly, that defense is not addressed in this Ruling.